## Ege *against* Kauffman.

M. and B. being indebted to J. K. a quantity of pig metal, for which he held their written obligation; J. K. transferred this obligation by delivery to A. K., who afterwards purchased property from A. G. E., and gave him a written promise to deliver to him at the furnace of M. and B. a quantity of pig metal; and the obligation of M. and B. came into the possession of A. G. E. In an action by A. G. E. against A. K., on his written promise, it was *held* that the refusal of M. and B. to deliver the pig metal to A. G. E., until he presented their obligation, was not a good defence, and that A. K. was liable on his own written promise.

ERROR to the Common Pleas of *Cumberland* county.

Andrew G. Ege against Abraham Kauffman. This was an action on the case in which the plaintiff declared upon the following instrument:

" Rec'd, 19th Aug. 1839, of A. G. Ege, two horses, valued at one hundred and seventy-five dollars, for which I am to deliver to him at Big Pond Furnace six and three-fourths tons of good forge pig metal, at any time he may call.

" ABRAHAM KAUFFMAN."

[Ege v. Kauffman.]

E. Owen sworn. I called at the Big Pond Furnace about the middle of December, 1839. I saw Hatten the manager there, he told me he would not give any pig metal on Kauffman's account; there was but a small quantity of metal there, and Hatten told me what was on hand he thought had been sold; Mr. Ege sent a wagon up at the same time for the metal; it went home empty.

Cross-examined—I had not Moore's agreement to deliver the iron along with me; there was an obligation given by Moore & Biddle to Kauffman for the iron, and I think I had it with me at the time.

For defendant.

John Moore offered as a witness; objected to by plaintiff; objection overruled; exception taken, and bill sealed.

John Moore sworn. I gave an agreement to Joseph Kauffman to deliver about thirty-eight tons of pig metal for a store I bought; Kauffman owed a number of persons bills or debts; and he was drawing orders on me, which I refused to accept unless the original was produced; when Mr Brandeberry's iron was delivered, I gave him a new obligation for the balance after deducting balance; Barnitz got a portion endorsed on the back of the agreement or note; a portion was given to Michael Ege at the lower forge; there was still a balance due upon this agreement or bill; the iron to M. Ege was delivered by Kauffman himself. When Hatten managed, I told him not to deliver iron to any person unless they produced my order or due bill in which I agreed to give iron, when so produced to give it; I understood from A. G. Ege, that he had traded horses for this agreement, and had got it; there was always iron there whenever anything of that kind was produced to give for it. Hatten was my manager.

Cross-examined—Three years since the agreement was given; gave it at Centreville; Ege had the original, and said afterwards he gave it to Kauffman; I gave the original one myself; don't know of Ege getting iron on the order; I told Ege I would give iron if original order was produced, but would not give on Kauffman's order unless it was; told Ege I would accept order if that was produced; I told Ege I would not give iron on Kauffman's order, but when the note I gave was produced, I would be bound to give it. Ege told me he had the paper, but never produced it; I always told Kauffman I would deliver when the order was produced; I considered it a kind of due bill—an agreement to deliver at Big Pond Furnace so much iron.

"Rec'd, Aug. 19, 1839, of Ab'm Kauffman, by the hands of Daniel Kauffman, $175 in pig metal, which is in full for the two horses sold him this day. A. G. EGE."

John Moore, again. A. G. Ege never got that metal which the receipt calls for at my furnace.

[Ege v. Kauffman.]

John Hatten affirmed.   There was a call made at one time by Mr Ege for metal for Kauffman; Owens came with the team; I asked him if he had an order, he said not; I told him I would not give any without an order; he then spoke of metal coming to Kauffman; I told him I did not know of any there for Kauffman, and Moore said I should not give any without an order; there was metal there, and if he had produced Moore's order, he would have had it; or if he had produced the agreement signed by Moore, he would have got it; he had told me before about Ege coming with the agreement before Owens came there; think I understood Moore he had given Ege something of that kind; the third time Ege's wagon came up, Mr Ege was along, and Moore told him he would not give him any iron on Joseph Kauffman's order; Ege got a load on his own account; never had any objection, but that this paper must be produced.

Cross-examined—Moore said he had bought a due bill or note for ten dollars, on Joseph Kauffman's account; Owen wanted a load badly, and I said the iron there was sold, but if he had produced the order I would have given it; Clever and others were to get iron, and I would not have cared much.

Moore, again.   After I bought Kauffman's store, I employed him as a clerk; I had a long account with him, and on this account I would not give him iron; I told Ege if he had my agreement I would give the iron if that much was coming; Ege said he had it, but I never saw it.

" Thirty days after demand, we promise to deliver to the order of Joseph Kauffman, at the Big Pond Furnace, thirty-two and three-quarter tons of pig metal.

" $32\frac{3}{4}$ Tons.

" MOORE & BIDDLE.

" *Carlisle*, 22d Aug. 1837."

*Endorsed on the Paper.*—" Moore & Biddle will deliver to A. G. Ege, or order, on demand, twenty and three-quarter tons good forge pig metal, balance due of thirty-two and three-quarter tons on the within order.                    Jos. KAUFFMAN.

11th Sep. 1837.

Barnitz received - - - - - 12 tons
A. G. Ege - - - - - - - - 8   "
M. G. Ege - - - - - - - - 6   "
                              ——
                              26
Balance on $32\frac{3}{4}$ tons - - -   $6\frac{3}{4}$."

For plaintiff.

Edward Ege sworn.   I was at my brother's at the time these horses were sold; my brother called me to witness the papers; after they were signed, my brother said, " suppose Moore would

[Ege v. Kauffman.]

not give the pig metal"—Kauffman said, " if he did not, he would stand for it."

Cross-examined—This was an exchange of the horses for this order for the metal; he said if he did not get the metal, Kauffman said he would stand for it.

E. Owen, again. This is the order I referred to, when I said that I had it with me; can't tell whether I had it or not.

The counsel for plaintiff requested the Court to charge the jury upon the following points:

1. That upon the contract of Mr Kauffman upon which the suit is brought, it was his duty to make such provision and arrangement at the Big Pond Furnace, that the iron therein mentioned should be delivered upon the demand of Mr Ege, and upon his failure so to do, and if the jury are satisfied that Mr Ege did make the demand, and the iron was refused, the plaintiff is entitled to recover.

2. That Mr Moore's refusal to deliver the iron until his original obligation to pay it was produced, will not avail Mr Kauffman as a defence in this suit.

The Court thus charged the jury:

This suit is brought by the plaintiff to recover the value of $6\frac{3}{4}$ tons of pig metal, which it is alleged the defendant agreed to deliver to plaintiff at the Big Pond Furnace. The plaintiff relies on two propositions in law, which he says entitle him to your verdict.

As to the first point. This is certainly true, if the rights of these parties stood on the written paper exhibited by plaintiff, as entered into on the 19th of August 1839. But there are other circumstances in evidence in relation to this transaction, which you will also remember. It seems Moore and Biddle, the owners of the Big Pond Furnace, gave their note to Kauffman for a quantity of pig iron, to be delivered at their furnace. A portion of this iron was given to several individuals—and a balance remaining due on the note of $6\frac{3}{4}$—as appears from a calculation made on the back of it. This note, with the calculation upon it, it seems was handed to Mr Ege at the time the agreement on which this suit is brought was entered into, kept and produced by him on the trial of this cause. You will also recollect that Moore & Biddle's contract for the delivery of the iron was made with Kauffman, and by him handed to Ege. Now, Moore & Biddle were not bound to furnish the iron to Ege on their engagement with Kauffman, without being satisfied Ege was really the holder of it. If, then, Mr Ege was in possession of this note, and refused to exhibit it to Moore, and, by reason of this refusal alone, Moore declined to furnish the iron to Ege for Kauffman, Ege cannot visit the failure to receive the iron, occasioned by his own default, upon the head of the defendant, and recover from him its value in damages.

[Ege v. Kauffman.]

As to the second point.

Moore's refusal to deliver the iron, as indicated in this point, would not avail the defendant here, unless his refusal was occasioned by the conduct of the plaintiff, as stated in the previous answer to the first point. If Moore was acquainted with all the circumstances of this transaction, or had been advised by Kauffman of the transfer of his claim, it would have been sufficient; but Ege alone telling him he had the transfer of the note, was not enough without its production. How the facts are you must determine from the whole testimony, and find such verdict as you think right.

Errors assigned:

1. In the first bill, admitting John Moore as a witness.
2. In the answer to plaintiff's first and second points.

*Watts*, for plaintiff in error.
*Biddle*, for defendant in error.

The opinion of the Court was delivered by

SERGEANT, J.—The facts of this case are so obscure, that it is difficult to be clearly understood. It would seem that in August 1837, Moore and Biddle, iron masters, gave to Joseph Kauffman (not the defendant) an agreement in writing, to deliver to him, in thirty days after demand, at their furnace, $32\frac{3}{4}$ tons of pig metal. On the 11th of September 1837, Joseph Kauffman endorsed thereon an order on Moore & Biddle, to deliver to A. G. Ege, (the plaintiff,) on demand, $20\frac{3}{4}$ tons good forge pig metal, balance due of $32\frac{3}{4}$ tons on the within order. There is further endorsed on it, without date, a receipt by Barnitz of 12 tons, A. G. Ege 8 tons, M. G. Ege 6 tons; showing a balance on the $32\frac{3}{4}$ tons of $6\frac{3}{4}$ tons. This order, it would seem, was delivered to the plaintiff, but at what time does not appear, nor when Barnitz received his 12 tons, though it would appear that Barnitz must have received the 12 tons before the endorsement, for it states that $20\frac{3}{4}$ tons were then the balance due. In August 1839, the defendant, Abraham Kauffman, received two horses from the plaintiff, and in payment gave him his agreement in writing to deliver to him at Moore & Biddle's furnace, $6\frac{3}{4}$ tons of metal, at any time he might call. This, it is to be observed, was a positive engagement on the part of the defendant, binding himself personally to deliver at the furnace, when called for, $6\frac{3}{4}$ tons, without any condition to be performed by the plaintiff.

The plaintiff, under these circumstances, sent a person to the furnace, with the agreement of August 1839, to demand the $6\frac{3}{4}$ tons. Moore & Biddle refused to deliver them, unless the original agreement of August 1837 were produced and surrendered to them; and the question is, whether the non-production to Moore

[Ege v. Kauffman.]

& Biddle by the plaintiff of the original agreement is a sufficient excuse to the defendant in this action.

If the demand of the 6¾ tons by the plaintiff had been on Moore & Biddle, under the original agreement as assignee or holder, it would have been the duty of the plaintiff to produce it to them before they could be sued for refusal to deliver the iron. But if the demand of the iron was under the agreement of 1839, which was the defendant's agreement, and not that of Moore & Biddle, it would be the duty of the defendant by that agreement to deliver the iron without the plaintiff's producing the first agreement, unless the defendant could show that the plaintiff had in some way engaged himself to do so. For such is the tenor of the written contract of 1839, and we cannot introduce terms not contained in it. It would seem that though the plaintiff had an assignment of the agreement of 1837 from Joseph Kauffman, yet, for some reason or other, it was not deemed effective, for he obtained in payment of the horses, a new and distinct engagement from the defendant, Daniel Kauffman, of what seems to be the same 6¾ tons of pig iron, which was the balance due on the agreement. The reasons of his doing so are not apparent. The objection to the plaintiff's recovery is of a strict kind, and goes to defeat his claim if the verdict stands. It ought, therefore, to be clearly shown that the defendant was absolved from his engagement to deliver the iron, before the objection should be sustained. The mere possession by the plaintiff of the original agreement, without any further circumstance, does not seem to be sufficient for that purpose, as the defendant might have provided, by some arrangement with Moore & Biddle, that the plaintiff's demand should have been complied with by them; and the *onus* of that must be considered as assumed, under the written agreement of 1839, by the defendant, and not by the plaintiff.

We think there was no error in the admission of Moore as a witness for the defendant. It does not appear that he is in any way interested in the event of this suit.

Judgment reversed, and a *venire facias de novo* awarded.